**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION**

LESLIE NATHAN GROETTUM,

        Plaintiff,

v.                                   Case No:  2:17-cv-611-FtM-29CM

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

---

**REPORT AND RECOMMENDATION**[1]

    Plaintiff Leslie Nathan Groettum seeks judicial review of the denial of his claims for disability and disability insurance benefits ("DIB") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed the record, the Joint Memorandum (Doc. 19) and the applicable law. For the reasons discussed herein, the Court respectfully recommends the decision of the Commissioner be reversed.

---

[1] A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1. In order to expedite a final disposition of this matter, if the parties have no objection to this Report and Recommendation, they promptly may file a joint notice of no objection.

## I.      Issues on Appeal[2]

Plaintiff raises six issues on appeal:[3]  (1) whether the administrative law judge ("ALJ") erred in his evaluation of the Department of Veterans Affairs' ("VA") disability ratings; (2) whether the ALJ erred in failing to find Plaintiff's mental impairments to be severe and to include relevant limitations in the residual functional capacity ("RFC"); (3) whether substantial evidence supports the ALJ's finding of a light RFC; (4) whether the ALJ erred in failing to qualify the vocational expert ("VE") before eliciting testimony; (5) whether substantial evidence supports the ALJ's reliance on testimony of the VE regarding the existence of significant numbers of jobs that Plaintiff could perform; (6) whether substantial evidence supports the ALJ's rejection of a July 2016 MRI because of a June 30, 2016 date last insured.

## II.     Summary of the ALJ's Decision

On October 8, 2014, Plaintiff applied for DIB, alleging his disability began on September 28, 2012 due to right hand weakness, neck fusion, high blood pressure, chronic pain, depression, anxiety and high cholesterol.    Tr. 62-63, 180-81. Plaintiff's claims were denied initially on January 26, 2015, and upon reconsideration on May 15, 2015.    Tr. 62-71, 73-83.    On July 14, 2015, Plaintiff requested a hearing

---

[2] Any issue not raised by Plaintiff on appeal is deemed to be waived.  *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

[3] For clarity and judicial efficiency, the Court will address the issues in a different order than the Joint Memorandum.

before an ALJ.  Tr. 124-25.  ALJ Michael Kopicki held a hearing on November 8, 2016, and on December 22, 2016, the ALJ found Plaintiff was not disabled from September 28, 2012 through June 30, 2016, the date last insured.  Tr. 16-26, 32-61.

At step one, the ALJ found Plaintiff last met the insured status requirements of the Social Security Act on June 30, 2016 and had not engaged in substantial gainful activity since the alleged onset date of September 28, 2012.  Tr. 18-19.  Next, at step two, the ALJ found Plaintiff had these severe impairments: degenerative disc disease of the cervical spine, status-post two surgeries, and degenerative disc disease of the lumbar spine.  *Id.*  The ALJ further found that Plaintiff's depression and anxiety were medically determinable impairments, but considered singly and in combination, they "did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and were therefore nonsevere."  Tr. 19-21.

At step three, the ALJ concluded that through the date last insured, Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  Tr. 21.  The ALJ determined Plaintiff had the RFC to perform light work[4] except:

---

[4] The regulations define light work as work that involves:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full

> the claimant can lift and carry 20 pounds occasionally and 10 pounds
> frequently; sit for six hours in an eight-hour workday with normal
> breaks; and stand and/or walk for six hours in an eight-hour workday
> with normal breaks. The claimant is limited to occasionally climbing
> ladders, ropes, and scaffolds, stooping, and crouching. He can
> frequently balance, kneel, and climb ramps and stairs. The claimant
> can frequently reac[h] overhead with either upper extremity.

Tr. 21-24. At step four, the ALJ determined Plaintiff could not perform any past relevant work. Tr. 24. Finally, at step five, the ALJ determined there were a significant number of jobs in the national economy Plaintiff could perform, identifying the jobs of ticket taker, marker and shipping and receiving weigher. Tr. 24-26. The ALJ concluded Plaintiff was not disabled from September 28, 2012 to June 30, 2016, the date last insured. Tr. 26. The Appeals Council denied Plaintiff's request for review on September 19, 2017, and Plaintiff filed a Complaint with this Court. Tr. 1-3; Doc. 1. The matter is now ripe for review.

## III. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The Commissioner's findings of fact are conclusive if supported by

---

> or wide range of light work, you must have the ability to do substantially all of
> these activities. If someone can do light work, we determine that he or she
> can also do sedentary work, unless there are additional limiting factors such
> as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

substantial evidence.   42 U.S.C. § 405(g).[5]   Substantial evidence is "more than a scintilla, i.e., evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion."   *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted).

"In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings."   *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015).   Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact or found that the preponderance of the evidence is against the Commissioner's decision.   *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings).   The Court reviews the Commissioner's conclusions of law under a *de novo* standard of review.   *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

---

[5] After the ALJ issued the decision, certain Social Security rulings and regulations were amended, such as the regulations concerning the evaluation of mental impairments and disability determinations by other governmental agencies.   *See, e.g.*, 20 C.F.R. §§ 404.1504, 404.1520a (effective March 27, 2017).   The Court will apply rules and regulations in effect at the time of the ALJ's decision.   *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1308 (11th Cir. 2018); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988); 20 C.F.R. § 404.1527 (effective March 27, 2017) ("For claims filed . . . before March 27, 2017, the rules in this section apply.").

## IV.   Discussion

### a.   *VA's disability ratings*

Generally, when reaching a decision, an ALJ must state with specificity the weight he affords each item of evidence and why.   *Kemp v. Astrue*, 308 F. App'x 423, 426 (11th Cir. 2009) (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)). The Social Security regulations provide that a decision by another governmental agency about whether a claimant is disabled is not binding on the Commissioner because it is not based on social security law.   20 C.F.R. § 404.1504; *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 940 (11th Cir. 2011).   The Social Security Rulings, however, explain that such decisions and the evidence used to make them cannot be ignored, as they may provide insight into the claimant's impairments:

> [E]vidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered.
>
> These decisions, and the evidence used to make these decisions, may provide insight into the individual's mental and physical impairment(s) . . . .

SSR 06-03p, 2006 WL 2329939, at *6-7 (Aug. 9, 2006).   The Eleventh Circuit has held that the VA's disability rating is evidence that should be considered and given great weight.   *See, e.g.*, *Brady v. Heckler*, 724 F.2d 914, 921 (11th Cir. 1984) (citing *Olson v. Schweiker*, 663 F.2d 593, 597 n.4 (5th Cir. 1981)); *see also Rodriguez v. Schweiker*, 640 F.2d 682, 686 (5th Cir. 1981)[6] (noting VA's disability rating is

---

[6] Decisions of the Fifth Circuit rendered prior to October 1, 1981 are binding precedent on the Eleventh Circuit.   *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207, 1209 (11th Cir. 1981).

"certainly not binding on the Secretary, but it is evidence that should be considered and is entitled to great weight"); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1241 (11th Cir. 1983) ("The findings of disability by another agency, although not binding on the Secretary, are entitled to great weight."). However, "if the other agency's standard for determining disability deviates substantially from the Commissioner's standard, [it is not] error for the ALJ to give the agency's finding less than substantial weight." *Hacia v. Comm'r of Soc. Sec.*, 601 F. App'x 783, 786 (11th Cir. 2015).

Here, the ALJ discussed the VA's ratings and the weight he gave them in his RFC determination:

> The claimant was assessed with 70 percent disability by the Veterans Administration. A decision by [an]other governmental agency about whether an individual is disabled is not binding on the Social Security Administration. Each agency operates under its own rules. Nevertheless, the opinions must be evaluated [] as they may have a bearing on the determination of disability. In the instant case the Veterans Administration rated disabilities for degenerative arthritis, major depressive disorder, paralysis of the lower radicular nerve group, and paralysis of the ulnar nerve. Around the beginning of 2016, his disability was raised to 100 percent. These ratings are given limited weight, as they do not provide a function-by-function assessment of the claimant's limitations. In addition, it is not clear what factors were being considered in arriving at this rating, including the claimant's activities of daily living and physical examinations described above, which do not corroborate the claimant's allegations of weakness, his work activity, and do not corroborate his allegations of drowsiness and dizziness.

Tr. 23-24 (internal citations omitted). Plaintiff argues that although the ALJ addressed the VA's initial assessment of 70% disability and subsequent assessment of 100% disability, he improperly failed to give the VA's rating of disability great weight. Doc. 19 at 15-16, 18. Plaintiff asserts the ALJ's failure to give adequate

weight to the VA's disability determination resulted in a decision unsupported by substantial evidence.   *Id.* at 18.   While acknowledging the Eleventh Circuit requires disability determinations by the VA be afforded great weight, the Commissioner responds that such determinations are not binding on the Commissioner.   *Id.* at 18-19.   The Commissioner argues the ALJ satisfied his obligation by addressing the VA's disability rating and explaining that he gave it little weight because the ratings provided no function-by-function assessment of Plaintiff's limitations, it was unclear what factors the VA considered in determining Plaintiff's ratings, and Plaintiff's activities of daily living and physical examinations did not corroborate Plaintiff's allegations of disability.   *Id.* at 19-20.   The Commissioner asserts substantial evidence—namely, the evidence discussed by the ALJ—supports the ALJ's decision to afford little weight to the VA's disability ratings.   *Id.* at 22.

The Court recommends the ALJ erred in failing to adequately consider the VA's disability ratings.   Although the ALJ considered the VA's rating decision in determining to give it little weight, he did not mention the VA's decision that Plaintiff was unemployable.   *See* Tr. 23-24, 289 (VA's ratings letter referencing Plaintiff's entitlement to individual unemployability effective February 2011), 862 (VA psychology consult note referencing Plaintiff's unemployability status through the VA).   Further, upon review of the record, pages are missing from the April 29, 2011 VA disability decision. Tr. 284-89.[7]   The first page of the decision indicates the letter

---

[7] The first and second page of the decision appear to be duplicated twice.   *Compare* Tr. 284-85, *with* Tr. 286-87, 288-89.

"includes a copy of our rating decision that gives the evidence used and reasons for our decision," but the pages that should have included this information are missing. *See* Tr. 284.   Not only did the ALJ fail to acknowledge these pages were missing from the decision letter—although he should have—he relied on the fact that it was "not clear what factors were [] considered" to support his decision to give the VA rating little weight.   Tr. 23-24.   Further, the decision letter refers to amending the benefit payments under a previous award, but there are no other rating decision letters in the record.   *See* Tr. 284.   Therefore, the Court cannot determine whether substantial evidence would support discounting the VA decision because the ALJ failed to adequately develop the record regarding Plaintiff's VA ratings.

Prior to determining the weight of the VA's disability rating, the ALJ had a duty to develop the record and obtain the necessary documents from the VA.   *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (citing *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995) (per curiam)); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *Graham v. Apfel*, 129 F.3d 1420, 1422-23 (11th Cir. 1997) (stating the ALJ has an affirmative duty to develop the record fully and fairly).   The Supreme Court has held, and the Eleventh Circuit has recently restated, "Social Security proceedings are inquisitorial rather than adversarial.   It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000); *see Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (citing *Sims*, 530 U.S. at 111).   "This obligation exists even if the claimant is represented by counsel, or has waived the

right to representation." *Cowart*, 662 F.2d at 735 (internal citations omitted) (citing *Clark v. Schweiker*, 652 F.2d 399, 404 (5th Cir. 1981); *Thorne v. Califano*, 607 F.2d 218, 219 (8th Cir. 1979)).

An ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Cowart*, 662 F.2d at 735 (internal quotation marks omitted).   Likewise, "[w]here there are references in the medical records to a VA disability finding, the ALJ has the duty to develop the record relating to the other agency's disability findings." *Cronin v. Comm'r of Soc. Sec*, No. 6:10-cv-1765-Orl-DAB, 2012 WL 3984703, at *6 (M.D. Fla. Sept. 11, 2012) (citing *Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476, 479-80 (10th Cir. 1993)).   This and other courts have found remand appropriate when the ALJ did not fully develop the record relevant to the VA's disability rating.   *See Chait v. Comm'r of Soc. Sec.*, No. 2:17-cv-222-FtM-CM, 2018 WL 2715459, at *3-4 (M.D. Fla. June 6, 2018) (finding remand appropriate where the ALJ failed to develop the record and adequately review the VA's rating decision because pages were missing from the VA's decision); *Alcalde v. Comm'r of Soc. Sec.*, No. 2:15-cv-575-FtM-MRM, 2016 WL 4889988, at *6 (M.D. Fla. Sept. 15, 2016) (finding remand appropriate where the ALJ afforded little weight to the VA's disability decision based on a lack of medical evidence and reasoning without fully developing the record as to the VA decision); *Mallory v. Comm'r of Soc. Sec.*, No. 6:14-cv-1669-Orl-GJK, 2015 WL 8321898, at *4 (M.D. Fla. Dec. 9, 2015) (finding remand appropriate because the ALJ did not attempt to obtain the VA's disability determination although the record referenced the VA's decision).

Because the ALJ here failed to carefully review the VA's rating decision, determine the record was incomplete, obtain the missing pages, and then "seriously consider and closely scrutinize the VA's disability determination,"[8] the Court recommends remand is warranted.   *See Beshia v. Comm'r of Soc. Sec.*, 328 F. Supp. 3d 1341, 1346-48 (M.D. Fla. 2018) (internal quotation marks omitted) (finding ALJ committed reversible error by failing to thoroughly review and adequately assess VA's disability rating); *Chait*, 2018 WL 2715459, at *3.

   *b.  July 2016 MRI*

To establish entitlement to DIB, a claimant must demonstrate he became disabled by his date last insured.   *See* 42 U.S.C. § 423; 20 C.F.R. § 404.315; *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).   Here, after evaluating Plaintiff's medical records from the relevant time period of September 28, 2012 through June 30, 2016, the ALJ discussed some of Plaintiff's medical records from after the expiration of Plaintiff's insured status:

---

[8] The Court notes the ALJ and both parties reference a VA initial assessment of 70% disability and a subsequent assessment of 100% disability.   *See, e.g.*, Tr. 23, 36; Doc. 19 at 19.   However, neither party provides a record cite demonstrating this change.   Further, the record, including Plaintiff's VA records, contains inconsistent references to 70% and 100% VA disability ratings.   *Compare, e.g.*, Tr. 489, 509-10, 656, *with* Tr. 643, 861, 865. Therefore, it is unclear whether there indeed was a shift from a 70% VA disability rating to a 100% VA disability rating in early 2016, or if the references in the record and by the parties to a 100% disability rating merely fail to take into account the VA's Combined Ratings Table. The records consistently indicate that Plaintiff's disabilities were rated as 40% degenerative arthritis of the spine, 30% major depressive disorder, 20% paralysis of lower radicular nerve group and 10% paralysis of ulnar nerve from at least February 2013 to March 2016.   *See, e.g.*, Tr. 509-10, 864.   Although these percentages add up to 100%, they equate to a 70% disability rating under the VA Combined Ratings Table.   *See* 38 C.F.R. § 4.25. The uncertainty concerning Plaintiff's correct VA disability rating further demonstrates the ALJ failed to fully develop the record such that he could adequately consider the VA's disability determination.

> A July 2016 lumbar spine MRI showed protrusion at L4-5 compressing the exiting L4 nerve root and an L5-S1 protrusion compressing the right S1 nerve root.   A functional assessment indicated that the claimant did not have difficulty doing errands alone or a serious difficulty walking or climbing stairs.   The claimant reported intermittent dysphagia in September 2016.   More recent records indicate that surgery was discussed, but provide little more detail and no physical examinations. I further note that if the claimant's condition worsened during this period, it was after the date last insured.

Tr. 23.   Plaintiff argues the ALJ erred in asserting the July 2016 MRI reflected worsening after the date last insured because the assessed damage could not have developed in the weeks between June 30, 2016 and the MRI.   Doc. 19 at 33. Plaintiff asserts that under SSR 83-20, the ALJ should have sought the services of a medical advisor to determine the date Plaintiff's condition began to worsen.   *Id.* at 34.   By failing to seek assistance, Plaintiff claims the ALJ's decision is unsupported by substantial evidence.   *Id.*   The Commissioner responds that "SSR 83-20 applies only when an ALJ finds a claimant disabled and then needs to infer the onset of disability, not when the ALJ finds a claimant not disabled."   *Id.* at 34-35.   The Commissioner also argues the ALJ noted a functional assessment and other records from the same time period that indicated no functional limitations beyond those assessed by the ALJ, and diagnoses alone cannot establish functional limitations. *Id.*

As an initial matter, SSR 83-20 is inapposite here.   As the Commissioner correctly states, "[t]he plain language of SSR 83-20 indicates that it is applicable only after there has been a finding of disability and it is then necessary to determine when the disability began."   *Id.* at 35; *Caces v. Comm'r, Soc. Sec. Admin.*, 560 F. App'x

936, 939 (11th Cir. 2014); *see Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 776 (11th Cir. 2010) (finding SSR 83-20 requires an ALJ "to obtain a medical expert in certain instances to determine a disability onset date *after a finding of disability*" (emphasis added)); *see also* SSR 83-20, 1983 WL 31249 (Jan. 1, 1983).   And the ALJ's decision does not necessarily reject the July 2016 MRI as Plaintiff suggests. To the contrary, the ALJ directly addressed the MRI with other evidence from that time period, including a functional assessment indicating Plaintiff "did not have difficulty doing errands alone or a serious difficulty walking or climbing stairs."   *See* Tr. 23 (citing Tr. 904).   Because the Court recommends the ALJ erred in failing to properly consider Plaintiff's VA disability rating, however, the Court recommends that the ALJ be required on remand to re-consider all the medical evidence in determining Plaintiff's RFC.

### c.  Severity determinations

A medically determinable physical or mental impairment is one that "can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. § 1382c(a)(3)(A). The Social Security Regulations explain what is needed for a claimant to show an impairment:

> [A claimant's] impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques.   A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms.

20 C.F.R. § 404.1508.   The regulations state that a claimant's statements alone "are not enough to establish that there is a physical or mental impairment."   20 C.F.R. § 404.1528.   Medically acceptable laboratory diagnostic techniques to establish a medical determinable impairment include "chemical tests, electrophysiological studies (electrocardiogram, electroencephalogram, etc.), roentgenological studies (X-rays), and psychological tests."   20 C.F.R. § 404.1528.

At the second step in the sequential evaluation process, the ALJ determines whether the claimant has a severe impairment.   20 C.F.R. § 404.1520(a)(4)(ii).   A severe impairment is an impairment or combination of impairments that significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c).   "An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).   "[A] diagnosis or a mere showing of a 'deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work." *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)). Plaintiff bears the burden of establishing her impairments are severe and prevent the performance of her past relevant work.   *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

In evaluating alleged mental impairments, the ALJ must use the "'special technique' dictated by the [Psychiatric Review Technique ("PRT") Form]" or comply with the form's mode of analysis, which is generally called the "paragraph B" criteria.[9] *Moore*, 405 F.3d at 1213 (citing 20 C.F.R. § 404.1520a(a)).   "This technique requires separate evaluations on a four-point scale of how the claimant's mental impairment impacts four function areas: 'activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation.'"   *Id.* (citing 20 C.F.R. § 404.1520a(c)(3-4)).   "A mental impairment generally is considered non-severe under step two if the degree of limitation in the first three paragraph B criteria is rated as 'none' or 'mild' and there have been no episodes of decompensation." *Stone v. Comm'r of Soc. Sec.*, 586 F. App'x 505, 512 (11th Cir. 2014); *see* 20 C.F.R. § 404.150a(d)(1).

Here, the ALJ determined Plaintiff's mental impairments were not severe. Tr. 19.   Although the ALJ recognized Plaintiff's depression and anxiety as medically determinable impairments, the ALJ found they "did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities."   *Id.* The ALJ summarized Plaintiff's history of depression and anxiety:

> The severity of the claimant's depression and anxiety has occasionally waxed and waned; however, overall, it has remained mild.   In March 2015, the claimant reported having increased depressive symptoms as he dealt with physical pain.   His sertraline and gabapentin were increased.   By June 2015, notes indicated that "both objectively and subjectively, [the claimant's] mood is improved, essentially euthymic, and stable on review."   The claimant's "adjustment disorder due to divorce [had] essentially resolved" in August 2015.   He reported that

---

[9] 20 C.F.R. Part 404, Subpart P, Appendix 1.

he tried to work for a cab company, but "could not handle the anger with the boss over time."   The claimant reported good mood with sertraline in September 2015.   The claimant reported a couple of episodes of explosive anger in November 2015.   On mental status examination, the claimant affect was constricted but variable to content of thought.   It was mildly skewed to the depressed and anxious section, but his mood remained euthymic.   The claimant reported that his anxiety and depression were out of hand in February 2016, at least partially due to his pending disability claim.   The claimant reported in September 2016 that he was "doing OK really[,"] planning another trip to Minnesota, and that his anxiety had been "under pretty good control."

Tr. 19-20 (most alterations in original) (internal citations omitted) (citing Tr. 635, 659, 664, 693, 706, 708, 801).   In finding Plaintiff's impairments not severe, the ALJ considered the four broad functional areas for evaluating mental disorders as required by the regulations, finding Plaintiff had mild limitations in activities of daily living, social functioning and concentration, persistence or pace with no extended episodes of decompensation.   Tr. 19-21

Plaintiff argues examining psychologist Dr. Paula Bowman, Psy.D. determined Plaintiff's prognosis was "fair to good with appropriate intervention," and because "fair" equates to "moderate" limitations under the SSA Program Operations Manual System ("POMS"), Plaintiff's mental impairments are severe.   Doc. 19 at 23. Plaintiff also contends the ALJ applied a severity standard "that was greater than de minimis."   *Id.* at 24.   Plaintiff asserts that various psychologists, psychiatrists and other physicians diagnosed Plaintiff with mental impairments including mood disorder, adjustment disorder, anxiety disorder, depression, depressive disorder and major depressive disorder, and the ALJ did not find Plaintiff's major depressive

disorder severe despite the VA rating Plaintiff 30% disabled due to the condition. *Id.* at 24-25.

The Commissioner argues the ALJ properly found Plaintiff had only mild limitations in his activities of daily living, social functioning, and concentration, persistence or pace with no episodes of decompensation, and thus the ALJ correctly determined Plaintiff did not have severe mental impairments. *Id.* at 26-27. The Commissioner also asserts that Plaintiff's diagnoses of mental impairments do not equate to a finding of severe impairments. *Id.* at 27. Further, the Commissioner contends the ALJ properly discounted the VA's disability ratings, and substantial evidence supports the ALJ's determination that Plaintiff's mental impairments were not severe. *Id.*

Most of Plaintiff's arguments about the severity of his mental impairments are unavailing. First, Plaintiff's reliance on Dr. Bowman's prognosis and the POMS is inapposite. On January 14, 2015, Dr. Bowman evaluated Plaintiff, which involved evaluating Plaintiff's mental status and completing a medical source statement. Tr. 473-76. In her medical source statement, Dr. Bowman assessed Plaintiff's psychological limitations:

> Vocationally, the claimant can follow and understand simple directions and instructions. He can perform simple tasks independently. He has mild difficulty maintaining attention and concentration. He has mild difficulty maintaining a regular schedule. He has mild difficulty learning new tasks. He can perform complex tasks independently. He has mild difficulty making appropriate decisions. He has mild difficulty relating adequately with others and he has mild difficulty appropriately coping with stress. His difficulties are caused by symptoms related to depression and anxiety.

Tr. 475-76.   Following this assessment, Dr. Bowman indicated Plaintiff's prognosis was "fair to good with appropriate intervention."   Tr. 476.

Plaintiff conflates Dr. Bowman's assessment of Plaintiff's prognosis with the POMS definition of a "moderate limitation" to evaluate paragraph B criteria because Dr. Bowman never suggested Plaintiff's functioning was "fair" on a sustained basis. *See* Tr. 476; *see also* Doc. 23 at 44; SSA, POMS, DI § 34001.032(F).[10]   Rather, she made specific findings that Plaintiff had mild difficulties with a variety of functions, ultimately determining Plaintiff did not have psychiatric problems significant enough to interfere with her ability to function.   *See* Tr. 475-76.   And, regardless of Dr. Bowman's findings, whether Plaintiff has a severe impairment or is disabled is reserved to the Commissioner.   *See* 20 C.F.R. § 404.1503; *Mullin v. Astrue*, No. 307-cv-765-J-JRK, 2008 WL 5412190, at *6 (M.D. Fla. Dec. 29, 2008).

Plaintiff's reliance on her diagnoses of mental impairments also lacks merit. Plaintiff claims that between 2013 and 2016, three psychologists, three psychiatrists and a medical doctor all assessed mental impairments including mood disorder, adjustment disorder, anxiety disorder, depression, depressive disorder and major depressive disorder.   Doc. 19 at 24 (citing Tr. 476, 526, 532, 535, 546, 549, 553, 570,

---

[10] The Court notes the POMS merely functions as "publicly available operating instructions for processing Social Security claims." *Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 385 (2003).   The POMS does not have the force of law and thus is, at best, persuasive authority.   *See Stroup v. Barnhart*, 327 F.3d 1258, 1262 (11th Cir. 2003) ("While the POMS does not have the force of law, it can be persuasive."); *see also Wells v. Comm'r of Soc. Sec.*, 430 F. App'x 785, 786-87 (11th Cir. 2011) (finding the Commissioner's violation of POMS does not entitle a claimant to benefits because POMS does not have the force of law).

582, 586, 598, 616, 623-24, 660, 666, 675, 692, 699, 708, 794, 805, 837, 853, 866, 873). These diagnoses, however, do not undermine the ALJ's findings because "the 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *Id.* at 28-30; *McCruter*, 791 F.2d at 1547. "[T]he mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard." *Moore*, 405 F.3d at 1213 n.6.

Last, Plaintiff's argument that the ALJ applied a greater than de-minimis severity standard is unsupported by the record. After acknowledging Plaintiff's medically determinable impairments of depression and anxiety, the ALJ found they "did not cause more than *minimal* limitation in the claimant's ability to perform basic mental work activities and were therefore nonsevere." Tr. 19 (emphasis added). The ALJ recognized Plaintiff's diagnoses of depression and anxiety and found them to be medically determinable impairments. *Id.* The ALJ acknowledged Plaintiff's depression and anxiety waxed and waned over time but found they remained mild overall. *Id.* The ALJ discussed treatment notes in which Plaintiff reported increased symptoms on several occasions but also pointed out various treatment notes indicating Plaintiff was stable and euthymic with improved mood and symptom control. Tr. 19-20 (citing, e.g., Tr. 635, 659, 664, 693, 706, 801).

Based on Plaintiff's treatment history and reports, the ALJ evaluated Plaintiff's mental impairments as required under the regulations. *See* 20 C.F.R. §

404.1520a; 20 C.F.R. Part 404, Subpart P, Appendix 1; *Moore*, 405 F.3d at 1213-14. The ALJ found Plaintiff had mild limitation in his activities of daily living, primarily due to his physical impairments.   Tr. 20.   Plaintiff reported cooking five-to-seven times per week, doing laundry, going grocery shopping, reading, volunteering at the beach, traveling to Minnesota, playing cards and going to the movies.   *Id.* (citing Tr. 212-18, 801, 862).   Regarding Plaintiff's social functioning, the ALJ found Plaintiff had mild limitation, noting that despite Plaintiff's reports of social anxiety in large groups, he still volunteered at the beach, attend conventions and go to movies.   *Id.* (citing Tr. 862).   Plaintiff stated in his Function Report he has no difficulty getting along with others, although he mentioned having a hard time with large groups of people.   *See id.* (citing Tr. 212-18); Tr. 217.   The ALJ found Plaintiff had mild limitation in concentration, persistence or pace, noting Plaintiff's activities of reading, volunteering, going to the movies and playing cards show a good ability to concentrate.   Tr. 20 (citing Tr. 212-18, 862).   Finally, the ALJ found Plaintiff had experienced no episodes of decompensation for an extended duration.   *Id.* Accordingly, the ALJ found Plaintiff's mental impairments non-severe.   *Id.*

Although some evidence supports the ALJ's severity determinations the Court recommends the ALJ failed to properly consider Plaintiff's VA disability ratings. Therefore, the Court further recommends that on remand, the ALJ re-evaluate the severity of Plaintiff's mental impairments, given the VA's disability ratings.[11]

---

[11] Plaintiff's argument that the ALJ failed to include appropriate mental limitations in the RFC determination will be addressed in the RFC section.

### d. RFC determination

When the ALJ finds that an impairment does not meet or equal a listed impairment at step three, the ALJ will proceed to step four to assess and make a finding regarding the claimant's RFC based on all the relevant medical and other evidence in the record of a claimant's ability to work despite her limitations. 20 C.F.R. §§ 404.1520(e), 404.1545(a); *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1520(f). For these purposes, relevant evidence in the record includes any medical history, daily activities, lay evidence and medical source statements. 20 C.F.R. § 404.1545(a). The claimant's age, education and work experience, and whether he can return to his past relevant work also are considered in determining her RFC. *Lewis*, 125 F.3d at 1440 (citing 20 C.F.R. § 404.1545(a)). The ALJ "must consider all allegations of physical and mental limitations or restrictions," not just those determined to be severe. SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996); *see* 20 C.F.R. § 404.1545(a)(2); *Gibson v. Heckler*, 779 F.2d 619, 622-23 (11th Cir. 1986). The ALJ must consider the combined effects of a claimant's alleged impairments and make specific, well-articulated findings on the effect of the impairments and whether they result in disability. *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987) (citing *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984)).

Here, the ALJ found Plaintiff had the RFC to perform light work with certain limitations:

> [T]he claimant can lift and carry 20 pounds occasionally and 10 pounds frequently; sit for six hours in an eight-hour workday with normal

breaks; and stand and/or walk for six hours in an eight-hour workday with normal breaks.  The claimant is limited to occasionally climbing ladders, ropes, and scaffolds, stooping, and crouching.  He can frequently balance, kneel, and climb ramps and stairs.  The claimant can frequently reach[] overhead with either upper extremity.

Tr. 21.  Plaintiff challenges the ALJ's RFC determination regarding his mental impairments and his finding that Plaintiff could perform light work rather than sedentary work.  The Court will address each.

> i.  Mental limitations

Plaintiff argues the ALJ failed to include relevant mental limitations in his RFC determination, leading to a decision unsupported by substantial evidence.   Doc. 19 at 23, 25.  The Commissioner did not specifically address this argument.   *See id.* at 25-27.  The Court recommends the ALJ erred in failing to address the Plaintiff's medically determinable mental impairments in determining his RFC.

As discussed, the ALJ employed the special technique dictated by the PRT for evaluating Plaintiff's mental impairments as required under the regulations. Limitations identified through the PRT to assess steps two and three, however, are not an RFC assessment; as SSR 96-8p explains:

> The psychiatric review technique in 20 CFR 404.1520a . . . and summarized on the [PRT] Form [] requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings.  The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps two and three of the sequential evaluation process.  The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders

listings in 12.00 of the Listing of Impairments, and summarized on the [PRT Form].

SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996).

Here, the ALJ acknowledged this requirement in his decision at the end of his step two/three analysis, finding "the following [RFC] capacity assessment reflects the degree of limitation I have found in the 'paragraph B' mental function analysis."  Tr. 21.  The RFC assessment, however, contains no analysis or even reference to the mild mental limitations found by the ALJ in the PRT analysis—let alone the "detailed assessment" required by SSR 96-8p—and the ALJ included no mental limitations in Plaintiff's RFC.  *See* Tr. 19-24.  Further, although the ALJ found Plaintiff's medically determinable impairments of depression and anxiety to be non-severe and to cause only mild limitations in Plaintiff's activities of daily living, social functioning, and concentration, persistence and pace, the ALJ was required to "consider all allegations of physical and mental limitations or restrictions," not just those determined to be severe.   *See* SSR 96-8p, 1996 WL 374184, at *5; *see also* 20 C.F.R. § 404.1545(a)(2); *Gibson*, 779 F.2d at 622-23.

Because the ALJ failed to discuss Plaintiff's mental impairments in his RFC determination or "expressly indicate that the medical evidence suggested [Plaintiff's] ability to work was unaffected by" his mild limitations, the Court cannot determine whether the ALJ's RFC determination adequately encompasses Plaintiff's mental impairments.[12]   *See Bowman v. Comm'r of Soc. Sec.*, No. 6:13-cv-614-Orl-31TBS,

---

[12] The Court notes that because the ALJ's RFC determination failed to discuss Plaintiff's mental impairments, it also did not adequately address Dr. Bowman's opinion that

2014 WL 4059140, at *5 (M.D. Fla. July 28, 2014) (internal quotation marks omitted) (alteration in original) (quoting *Winschel*, 631 F.3d at 1181); *Olsen v. Astrue*, 858 F. Supp. 2d 1306, 1320 (M.D. Fla. 2012) (finding reversible error where ALJ did not account for Plaintiff's moderate mental limitations in the RFC determination or make a finding that Plaintiff could perform work activities despite his moderate mental limitations without related RFC limitations); *Davis v. Astrue*, No. 3:07-cv-705-J-MCR, 2008 WL 3200278, at *6 (M.D. Fla. Aug. 5, 2008) (finding reversible error where ALJ conducted no more detailed analysis of the PRT categories when making RFC determination and RFC thus did not appear to adequately reflect Plaintiff's mental impairment).  Further, as discussed, the ALJ did not afford proper weight to the VA's finding that Plaintiff was 30% disabled due to his major depressive disorder. *See, e.g.*, Tr. 285.  The Court recommends the ALJ erred in failing to adequately address Plaintiff's mental limitations, and such error requires remand to properly ascertain Plaintiff's RFC.

### ii.  Ability to Perform Light Work

Plaintiff also argues the ALJ's failure to limit Plaintiff to sedentary work resulted in a decision unsupported by substantial evidence.   Doc. 19 at 36.   Plaintiff references objective examinations demonstrating various physical restrictions and limitations, the VA's disability ratings related to paralysis of lower radicular nerve group, paralysis of the ulnar nerve and degenerative arthritis of the spine, and Plaintiff's low back pain with radiation to the leg, arguing these conditions are not

---

Plaintiff could follow and understand simple directions and instructions.   *See* Tr. 475.

indicative of an ability to perform light work.   *Id.*   The Commissioner responds that despite Plaintiff pointing out some conflicting evidence, substantial evidence supports the ALJ's decision.   *Id.* at 36-37.

In determining Plaintiff's RFC, the ALJ discussed Plaintiff's alleged physical impairments and relevant medical records.   *See* Tr. 21-24.   Because the ALJ failed to give proper weight to the VA's disability ratings, however, the Court cannot determine whether substantial evidence supports the ALJ's RFC determination. The Court recommends the case be remanded so the ALJ can properly evaluate Plaintiff's VA disability ratings and any effect they may have on RFC.

### e.  VE testimony

Plaintiff challenges the VE's testimony on two points, arguing (1) the ALJ improperly failed to qualify the VE as required by the Commissioner's Hearings, Appeals and Litigation Law Manual ("HALLEX"); and (2) substantial evidence does not support the ALJ's finding that a significant number of jobs exist in the national economy that Plaintiff could perform because the VE's testimony about job numbers was inaccurate.   The Court will address each.

### i.  VE Qualification

"[HALLEX] is a policy manual written by the Social Security Administration to provide guidance on procedural matters."   *See Warren v. Astrue*, 830 F. Supp. 2d 1369, 1372 (S.D. Fla. 2011) (citing *Moore v. Apfel,* 216 F.3d 864, 868 (9th Cir. 2000)); *Carroll v. Soc. Sec. Admin., Comm'r,* 453 F. App'x 889, 892 (11th Cir. 2011) (noting that HALLEX is "an agency handbook for the SSA").   Although HALLEX gives

guidelines for the ALJ's hearing process, the Eleventh Circuit "has not decided whether HALLEX carries the force of law." *McCabe v. Comm'r of Soc. Sec.*, 661 F. App'x 596, 599 (11th Cir. 2016)*; see also George v. Astrue*, 338 F. App'x 803, 805 (11th Cir. 2009) (noting that finding HALLEX carries the force of law would be "a very big assumption").   Other circuit courts and district courts, including one in this district, however, have found that HALLEX does not.   *See, e.g., Moore*, 216 F.3d at 869; *Hall v. Comm'r of Soc. Sec.*, No. 2:05-cv-559-FtM-29SPC, 2007 WL 4981325, at *10 (M.D. Fla. Feb. 9, 2007) ("HALLEX like all administrative manuals lacks the legal authority to bind the ALJ.").

Regardless, a mere showing that the agency violated HALLEX is not enough to merit remand; the claimant must show prejudice.   *McCabe*, 661 F. App'x at 599 (citing *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995)) ("Even assuming (without deciding) that HALLEX carries the force of law and the agency failed to comply with it," the claimant must show that "she was prejudiced by this failure"); *Carroll*, 453 F. App'x at 892 (finding that "an agency's violation of its own governing rules must result in prejudice before [the court] will remand to the agency for compliance") (citing *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981)); *see also Weber v. Comm'r of Soc. Sec.,* No. 2:16-cv-25-FtM-CM, 2017 WL 727765, at *3-4 (M.D. Fla. Feb. 24, 2017).

HALLEX § I-2-6-74(B) states:

After administering the oath or affirmation, the ALJ must (on the record):
- Ask the VE to confirm his or her impartiality, expertise, and professional qualifications;
- Verify the VE has examined all vocational evidence of record;

- Ask the claimant and the representative whether they have any objection(s) to the VE testifying; and
- Rule on any objection(s).   The ALJ may address the objection(s) on the record during the hearing, in narrative form as a separate exhibit, or in the body of his or her decision.

HALLEX § I-2-6-74(B), 1993 WL 751902 (last updated June 16, 2016).   Here, when transitioning to the VE's testimony, the ALJ said to Plaintiff's counsel:

> All right.   So typically you don't stipulate to the VE qualifications.   I will swear him in, and of course you can ask him any questions about background or testimony.

Tr. 54.   The ALJ and the VE then had the following dialogue:

> [ALJ]: Have you had a chance to look through the vocational material in the E section of the file?
>
> [VE]: I have, Your Honor.
>
> [ALJ]: Have you heard Mr. Groettum's testimony today?
>
> [VE]: Yes, sir.   I have.
>
> [ALJ]: Do you have sufficient information to provide a description of his past work?
>
> [VE]: I do, Your Honor.   But I need to call your attention to B-17-E which is the resume.   I've been telling each of the judges, that is an old resume.   The reason why I'm bringing it up because my CRC certification that's on there indicates 2009 expiration date.   We renew that every five years.   My current expiration date is September 2019.
>
> [ALJ]: All right.   So we're going to have to get an updated resume. . .

Tr. 54-55.

Plaintiff argues the ALJ improperly failed to qualify the VE as required under HALLEX § I-2-6-74.   Doc. 19 at 37-38.   Namely, Plaintiff asserts the ALJ failed to ask about the VE's qualifications, ask Plaintiff's counsel if he had objections to the VE testifying and ask the VE to confirm his impartiality and expertise.   *Id.* at 38.   The Commissioner asserts the ALJ acquired an updated resume from the VE for the

record, asked the VE about his work experience and noted Plaintiff's attorney typically would not stipulate to VE qualifications.  *Id.*  The Commissioner also contends the ALJ allowed Plaintiff to address or object to VE's qualifications on cross-examination, but Plaintiff raised no objection to the qualifications or objectivity of the testifying VE.  *Id.* at 38-39.  The Commissioner argues that even if the ALJ erred by not asking the VE about his impartiality or expertise on the record, Plaintiff failed to show how such error prejudiced him.  *Id.* at 40.

The Court recommends that although the ALJ erred in failing to specifically ask the questions required by HALLEX § I-2-6-74, any such error was harmless. The ALJ's violation of HALLEX would only merit remand if Plaintiff showed he suffered prejudice from the ALJ's non-compliance.  *McCabe*, 661 F. App'x at 599; *Carroll,* 453 F. App'x at 892.  The record demonstrates the ALJ did not specifically ask the VE about his impartiality or qualifications at the beginning of his questioning.  *See* Tr. 54-55.  The ALJ noted, however, he would obtain an updated resume from the VE, and the record reflects the VE's updated resume.  Tr. 55, 313-14.  The ALJ also noted Plaintiff's counsel typically would not stipulate to the VE's qualifications, acknowledging Plaintiff's objections.  Tr. 54.  The ALJ allowed Plaintiff's counsel to question the VE about his background, but during cross-examination of the VE, Plaintiff's counsel asked no questions related to the VE's background or qualifications.  *See* Tr. 54, 58-59.  Indeed, after completing cross-examination, Plaintiff's counsel stated: "Your Honor, I don't have any further questions.  I'll just remove the objections in my written memorandum," apparently

referring to a pre-hearing brief objecting generally to any VE testimony.   Tr. 59; *see* Tr. 308.   Perhaps most important, Plaintiff does not allege the VE actually was impartial or unqualified to testify.   *See* Doc. 19 at 37-38.   Therefore, although the ALJ may have erred in failing to follow the letter of HALLEX, the Court recommends any such error was not prejudicial.

### ii. Number of Jobs in the National Economy

At step five of the sequential evaluation process, the burden shifts to the Commissioner to produce evidence there is other work available in significant numbers in the national economy that the claimant can perform given her RFC. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Hale v. Brown*, 831 F.2d 1007, 1011 (11th Cir. 1987).   If the Commissioner can produce evidence of jobs available in significant numbers in the national economy that Plaintiff can perform, the burden shifts back to Plaintiff to prove he cannot perform the jobs identified by the Commissioner.   *See Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001) (citing *Jones*, 190 F.3d at 1228).

The ALJ must consider the claimant's RFC, age, education and work experience to determine whether the claimant "can make an adjustment to other work."   20 C.F.R. § 404.1520(a)(4)(v), (g).   In making this determination, "the ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence."   *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002).   The ALJ may consider the Dictionary of Occupational Titles ("DOT"), which is published by the Department of Labor.   SSR 00-4p, 2000 WL

1898704 (Dec. 4, 2000); *see* DOT, Occupational Definitions (4th ed., rev. 1991). The ALJ also may consider the testimony of a VE as a source of occupational evidence. SSR 00-4p, 2000 WL 1898704. "[I]n order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Phillips*, 357 F.3d at 1240 n.7 (quoting *Jones*, 190 F.3d at 1229). The ALJ has an affirmative duty to identify any possible conflict between the VE's testimony and the DOT and to "explain the resolution of the conflict." *Washington*, 906 F.3d at 1362-65 (quoting SSR 00-4p, 2000 WL 1898704).

Work exists in the national economy if it exists in significant numbers either in the region where Plaintiff lives or in several regions of the country, regardless of whether work exists in Plaintiff's immediate geographical area, specific job vacancies exist or Plaintiff would be hired if he applied. *See Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933-35 (11th Cir. 2015) (citing 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.966(a)-(c)); *see also* 20 C.F.R. § 404.1566(a)-(c)). On what constitutes a "significant number" in this context, the Eleventh Circuit has not fashioned a bright line rule. As the court recently noted:

> This Court has never held that a minimum numerical count of jobs must be identified in order to constitute work that "exists in significant numbers" under the statute and regulations. We have concluded, however, that the "appropriate focus under the regulation is the national economy," not the local economy in which the claimant lives.

*Atha*, 616 F. App'x at 934 (quoting *Allen v. Bowen*, 816 F.2d 600, 603 (11th Cir. 1987)).

Here, based on the hypotheticals posed by the ALJ, the VE testified Plaintiff could perform the jobs of "ticket taker, [DOT] 344.667-010, light, SVP-2, unskilled,

nationally 100,800;" "[m]arker, [DOT] 920.687-120, light, SVP-2, unskilled, nationally 118,000;" and "shipping/receiving weigher, [DOT] 322.867-074, light, SVP-2, unskilled, nationally 9,000." Tr. 56. The VE said his testimony was consistent with the DOT, but he relied on his experience as a job placement specialist and in vocational rehabilitation regarding limitations not referenced in the DOT. Tr. 57. On cross-examination, Plaintiff's counsel questioned the VE regarding the job numbers provided for the three identified jobs Plaintiff could perform:

| | |
|---|---|
| [ATTY]: | And what is your source of job numbers? |
| [VE]: | The Department of Labor's Bureau of Labor Statistics. |
| [ATTY]: | And the Bureau of Labor Statistics, they don't count by DOT code, do they? |
| [VE]: | They are by DOT code. |
| [ATTY]: | They do count by DOT code. I thought they counted by OES group. |
| [VE]: | There's a DOT code corresponding to the jobs I gave that were in a cluster of, within that SOC cluster. |
| [ATTY]: | So the Bureau of Labor Statistics counts by SOC clusters which are clusters of DOTs, correct? |
| [VE]: | Yes, that is correct. |
| [ATTY]: | So how do you provide a specific number for a specific DOT code if your source is counting by multiple DOT codes? |
| [VE]: | Because I'm looking at the actual subject matter, the similarity of the subject matter, material subject matter products and services that exist within that OES code. |
| [ATTY]: | So then your count is maybe not necessarily just for that DOT code, but for all the DOT codes and the subject matter similarities as that DOT code within that OES per SOC group? |
| [VE]: | That is correct. |
| [ATTY]: | Okay. Could some of those other DOT codes also contain greater exertion or skill level? |
| [VE]: | It could, yes. |
| [ATTY]: | Do you do anything to eliminate those jobs from the count? |

> [VE]:         No, I do not.

Tr. 58-59.

The ALJ relied on the VE's testimony to conclude there were jobs in significant

numbers in the national economy Plaintiff could perform:

> The vocational expert testified that given all of these factors [Plaintiff's age, education, work experience and RFC] the individual would have been able to perform the requirements of representative occupations such as:
> - Ticket Taker ([DOT] # 344.667-010, light, SVP 2, 100,800 jobs nationally);
> - Marker (DOT # 920.687-123, light, SVP 2, 118,000 jobs nationally); and
> - Shipping and Receiving Weigher (DOT # 222.867-074, light, SVP 2, 9,000 jobs nationally).

Tr. 25.   The ALJ determined the VE's testimony was consistent with the DOT and

overruled Plaintiff's counsel's objection to the VE testimony:

> A sufficient basis for vocational expert testimony can be professional knowledge and experience, as well as reliance on job information available from various government publications or other publications the Social Security Administration takes notice of.   I acknowledge the vocational expert has training and qualifications in vocational rehabilitation, and the vocational expert is not a statistician and does not count job numbers for the Bureau of Labor Statistics.   However, the vocational expert does not need to be a statistician to provide reliable testimony in this case.

*Id.* (internal citation omitted).

Plaintiff argues two of the three DOT codes identified by the ALJ do not exist,

and thus substantial evidence does not support that Plaintiff could perform either

job.   Doc. 19 at 29.   Plaintiff also asserts substantial evidence does not support he

could perform the duties of the ticket taker position given his exertional and mental

limitations.   *Id.* at 29-30.   Plaintiff argues the VE's method for determining the job

numbers for each DOT job is not supported by substantial evidence because the VE relied on numbers from the Department of Labor's Bureau of Labor Statistics counted by Standard Occupational Classification ("SOC") clusters of DOT codes rather than individual DOT codes without reducing the numbers to eliminate DOT codes with greater exertional levels or to account for part-time jobs.  *Id.* at 28-29.

The Commissioner responds that the VE's and ALJ's incorrect DOT codes are "little more than evidence of a scrivener's error," pointing out there are jobs with matching names and very similar DOT codes to those identified by the VE and ALJ in the DOT.  *See id.* at 30 (citing Marker II, DOT § 920.687-126, 1991 WL 687992; Shipping-And-Receiving Weigher, DOT § 222.387-074, 1991 WL 672108).  The Commissioner also asserts substantial evidence supports that Plaintiff could perform the identified jobs notwithstanding his physical and mental limitations.  *Id.* at 31-33.  The Commissioner further argues that even if the job numbers were reduced by the percentage of part-time jobs, the remaining numbers would still constitute a significant number of jobs in the national economy Plaintiff could perform.  *Id.* at 31.

In the Eleventh Circuit, a VE may rely on his knowledge and expertise without producing detailed reports or statistics to support his testimony.  *See Curcio v. Comm'r of Soc. Sec.*, 386 F. App'x 924, 926 (11th Cir. 2010); *Bryant v. Comm'r of Soc. Sec.*, 451 F. App'x 838, 839 (11th Cir. 2012).  Here, however, the VE did not testify that he relied on his knowledge or expertise in determining the number of jobs in the national economy.   The VE testified instead that the numbers came exclusively from

the Department of Labor's Bureau of Labor Statistics, and when questioned, he conceded he could not isolate the numbers to the specific DOT codes he identified. Tr. 58-59.   Nor did the VE make any reductions based on his knowledge or expertise to account for part-time positions or DOT codes outside of Plaintiff's RFC.   *See id.*; *contra Davis v. Berryhill*, CIVIL ACTION NO. 17-CV-293-N, 2018 WL 2208432 (S.D. Ala. May 14, 2018) (affirming Commissioner's denial of benefits where VE testified she relied on her knowledge and experience to reduce job numbers of identified jobs to account for the plaintiff's limitations).   Therefore, regardless of any scrivener's error in identifying the appropriate DOT codes, the Court recommends substantial evidence does not support the ALJ's reliance on the VE's testimony regarding the number of jobs in the national economy Plaintiff could perform.

Although the Court recognizes the three categories the VE identified contained a large number of total jobs, it cannot speculate that substantial evidence supports the finding the number of jobs Plaintiff can perform are significant.   On remand, the Commissioner may find significant the ultimate number of the jobs available in the national economy that Plaintiff could perform.   On the current record, however, the Court cannot discern what the number of jobs is in the national economy.   Nor can it recommend affirming the Commissioner's decision based on the assumption that the actual number must be significant.   Even if it could decipher the actual number, the Commissioner, not the Court, must determine whether that number is significant.   *See Allen*, 816 F.2d at 602.   Further, because the Court recommends the ALJ erred in failing to afford proper weight to Plaintiff's VA disability rating and

in determining Plaintiff's RFC, it is unclear if Plaintiff has the RFC to perform the jobs identified.   The Court recommends the case be remanded for a proper step five determination.

ACCORDINGLY, it is respectfully

**RECOMMENDED:**

1.     The decision of the Commissioner be **REVERSED** and this matter be **REMANDED** to the Commissioner, under sentence four of 42 U.S.C. § 405(g), for the Commissioner to:

   a.  Obtain and review the records from the Department of Veterans Affairs that relate to Plaintiff's disability rating and consider those records with all of Plaintiff's medical records and Plaintiff's testimony, and determine the weight to be given to such evidence and the reasons therefor;

   b.  Re-evaluate the severity of Plaintiff's mental impairments;

   c.  Re-evaluate Plaintiff's RFC given his alleged impairments singularly and in combination, including both his physical and mental medically determinable impairments;

   d.  Re-evaluate whether jobs are available in significant numbers that Plaintiff can perform given her RFC, which may require additional testimony from a vocational expert;

   e.  Make any other determinations consistent with this Report and Recommendation, or in the interests of justice.

2.     The Clerk of Court be directed to enter judgment under sentence four of 42 U.S.C. § 405(g) for Plaintiff Leslie Nathan Groettum, and close the file.

**DONE** and **ENTERED** in Fort Myers, Florida on this 7th day of January, 2019.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record